UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH MARVIN,

    Plaintiff,

v.                                                        Case No. 1:12-cv-249
                                                       Hon. Hugh W. Brenneman, Jr.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                           /

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB).

Plaintiff was born on June 9, 1960 (AR 135).[1] She is a high school graduate and had previous employment as a receptionist, a consumer loan processor, an operations manager at a mortgage company and a self-employed grocery store owner (AR 129, 133). Plaintiff identified her disabling conditions as: memory problems; candidiasis; fibromyalgia; lyme disease; confusion; chronic pain; fatigue; anxiety; panic attacks; depression; and vision problems (AR 128). Plaintiff stated that she is unable to work because: she takes so much medication for her medical conditions that she cannot focus; she is not able to stand, walk or lift; and she is afraid to leave her house (AR 128).

This is plaintiff's second application for DIB. In her first application, filed on July 12, 2005, plaintiff alleged a disability onset date of April 9, 2005 (AR 61). On November 5, 2007,

---

[1] Citations to the administrative record will be referenced as (AR "page #").

an administrative law judge (ALJ) denied her application for benefits (AR 61-68). Plaintiff filed the present application on November 20, 2007, also alleging a disability onset date of April 9, 2005 (AR 15, 135). At the administrative hearing, plaintiff's attorney amended the alleged onset date to November 6, 2007, the day after the previous decision denying plaintiff benefits (AR 15, 39). While the ALJ acknowledged the amended onset date and the previous decision denying benefits, he did not explicitly address the previous decision (AR 15). However, it is clear that the ALJ performed a *de novo* review of plaintiff's claim from the amended onset date of November 6, 2007 through her last insured date of March 31, 2009, and entered a written decision denying benefits on July 2, 2010 (AR 15-25). *See* discussion in § III.A., *infra*. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence.

*Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work

3

through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the original alleged onset date of April 9, 2005 through her last insured date of March 31, 2009 (AR 17). Second, the ALJ found that through the date last insured, plaintiff had severe impairments of fibromyalgia, Lyme disease, candida, depression and anxiety (AR 17). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 20). Specifically, the ALJ found that plaintiff did not meet the requirements of Listing 12.06 (anxiety related disorders) (AR 20-21).

The ALJ decided at the fourth step that:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) reduced by a need to change positions every hour briefly with no constant handling and fingering. She is limited to occasional balancing, kneeling, crouching and crawling and should avoid constant exposure to temperature extremes, dust humidity, hazards and fumes. Further, the claimant is limited to simple repetitive tasks with no exposure to dangerous environments. Sedentary work activity is defined as work that involves lifting of no more than 10 pounds. The full range of sedentary work requires sitting for up to six hours during an eight-hour workday and with walking and standing intermittently for up to two hours during an eight-hour workday.

(AR 21). The ALJ further found that plaintiff could not perform any past relevant work (AR 23).

4

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, sedentary jobs (AR 24-25). Specifically, plaintiff could perform the following jobs in the local economy: information clerk (5,000 jobs); clerical handler (4,000 jobs); production inspector/checker (2,000 jobs); and security services worker (4,000 jobs) (AR 24-25). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, at any time from April 9, 2005 (the alleged onset date) through March 31, 2009 (the date last insured) (AR 25).

### III. ANALYSIS

Plaintiff raised three issues on appeal.

**A. The ALJ's analysis alternated between the original and amended onset dates.**

Plaintiff contends that the ALJ's decision is confusing, because the decision alternates between applying the original onset date (April 9, 2005) and the amended onset date (November 6, 2007), stating that "the reader is not capable of determining which [disability onset] date the ALJ utilized when analyzing the case." Plaintiff's Brief at p. 13. The court disagrees.

In determining plaintiff's RFC, the ALJ applied AR 98-4(6) in determining that plaintiff's RFC was unchanged since the November 5, 2007 decision:

> The undersigned has considered the directives in AR 98-4(6), and finds the evidence from the revised alleged onset date of November 6, 2007 through the date last insured of March 31, 2009 do not indicate any significant change in the claimant's disorders, or her functional level. Therefore, the undersigned finds the residual functional capacity assessed at that time is still appropriate.

(AR 21).

AR 98-4(6) is an Acquiescence Ruling which arose from the Sixth Circuit's decision in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), that "[a]bsent

5

evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Drummond*, 126 F.3d at 842. AR 98-4(6) explains that the *Drummond* decision differs from the agency's policy:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo in determining disability with respect to the unadjudicated period.
>
> The Sixth Circuit concluded that where a final decision of SSA after a hearing on a prior disability claim contains a finding of a claimant's residual functional capacity, SSA may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different finding of the claimant''s residual functional capacity.

AR 98-4(6).

The agency provided the following explanation as to how an ALJ is to apply the *Drummond* decision in disability claims arising in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6).

Here, the ALJ applied AR 98-4(6) when he adopted the RFC determination from the November 5, 2007 decision denying benefits. While the ALJ could have provided a further explanation with respect to the application of AR 98-4(6), this arguable omission is not a ground for a remand or reversal of the ALJ's decision. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). This claim of error will be denied.

> **B.** **The ALJ incorrectly rejected the opinions of plaintiff's treating doctors and instead relied on an "a la carte" selection of medical findings and opinions.**
>
> **1.** **Dr. Ledtke's opinion**

Plaintiff's treating physician, Michael A. Ledtke, M.D., completed a questionnaire regarding plaintiff's limitations on April 8, 2010 (AR 460-66).[2] Plaintiff contends that the ALJ's decision denying benefits is not supported by substantial evidence. For example, plaintiff contends that the decision "lists numerous ticky-tacky reasons to support dismissal of Dr. Ledtke's opinions" and that "the ALJ should not be allowed to wander through the medical evidence of record like an individual at a buffet line, selecting only those items that meet with his taste and rejecting those that do not, and then formulating an RFC based on that process." Plaintiff's Brief at pp. 11-12. Plaintiff also contends that Dr. Ledtke had difficulty optimizing plaintiff's medications due to her waxing and waning symptoms, that the ALJ "punished Dr. Ledtke's tireless pursuit of medication optimization," that the ALJ never discussed plaintiff's reports of medication side-effects (i.e.,

---

[2] The court notes that while Dr. Ledtke's opinion was prepared more than one year after plaintiff's last insured date of March 31, 2009, he indicated that she had suffered the symptoms since July 2003.

7

drowsiness, "brain fogginess", muscle twitching and stomach upset), and that "[n]ot a single medical source supports the RFC" (i.e., while the agency's experts stated that plaintiff was capable of performing light work and simple tasks, Dr. Ledtke stated that plaintiff was capable of sustaining less than sedentary work). *Id.*

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). If a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case," then the agency will give the opinion controlling weight. 20 C.F.R. § 404.1527(c)(2) . An ALJ, however, is not bound by the conclusory statements of doctors, particularly where the statements are

unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Despite her criticisms of the ALJ's evaluation of Dr. Ledtke's opinions, plaintiff provides few specific reasons as to why the ALJ's decision is not supported by substantial evidence. Plaintiff's brief does not refer to any specific opinion offered by Dr. Ledtke other than stating that the doctor's statement that plaintiff "was capable of sustaining less than sedentary work" (AR 463). *Id.* at p. 12. As an initial matter, the doctor did not make an explicit statement regarding plaintiff's ability to perform less than sedentary work. Dr. Ledtke completed a form provided by plaintiff's attorney entitled "Chronic fatigue syndrome medical source statement" (AR 460-66). The ALJ summarized Dr. Ledtke's responses as follows:

> Dr. Ledtke completed a questionnaire at the request of the claimant's attorney on April 8, 2010. He stated he had been treating the claimant since November 2003. He stated she had Lyme disease, chronic candida, migraine headaches, and fibromyalgia. He stated she has unexplained persistent or relapsing chronic fatigue. He stated she has self-reported impairment of short-term memory or concentration. He stated she has tender lymph nodes, off and on. He stated she has muscle pain, multiple joint pains, headaches of a new type, pattern or severity, unrefreshing sleep, and post-exertional malaise lasting more than 24 hours. He opined the claimant could not walk a city block without rest or severe pain. He stated she can sit or stand for 15 minutes at a time, and for less than 2 hours in an 8-hour workday. He stated she would need to shift positions at will. He stated her need for unscheduled breaks would vary from day-to-day. He stated she could rarely lift and carry less than 10

9

pounds. He stated she could rarely twist, stoop, crouch/squat, and climb stairs, but never ladders. He stated she would be "off task" 25 percent or more during a workday due to symptoms that interfere with attention and concentration. He stated she was incapable of even "low stress" jobs noting stress worsens all of her symptoms. He stated these symptoms and limitations had been present since July 2003.

(AR 20).

The ALJ gave little weight to Dr. Ledtke's opinion:

An opinion is offered by Dr. Ledtke. The undersigned recognizes he is a treating physician, and his opinion was considered using the guidance in SSR 96-2p. However, his opinion is not supported by the findings on his numerous examinations and is inconsistent with other medical opinions. Dr. Ledtke has noted that Bicillin has been providing good results since at least early 2008. Although she has experienced migratory muscle and joint aches, she has consistently maintain good range of motion and has been able to move about well. She has also stopped the medications including Bicillin at will for periods of time, indicating that she is not as limited as Dr. Ledtke suggests. He suggests she has new onset of changed headaches that are imposing limitations. However, by the claimant's own statements to Dr. Ledtke, her headaches are about the same as they have been for 20 years. Therefore, this opinion can be given little weight.

(AR 22-23).

The ALJ noted that a non-examining state agency physician reviewed the record on September 11, 2008 and found that plaintiff could perform a full range of light work (AR 20, 343-50). However, the ALJ found that plaintiff's condition had worsened since that date and concluded that she could perform only a limited range of sedentary work:

It is noted that in reaching these conclusions regarding the severity of the claimant's impairments, the medical source opinions by state medical examiners have been considered. These opinions were based on information contained in the record at the time of the state agency review of the record, and no medical records generated or provided after that date were considered by the state examiners. However, additional medical evidence received (after the date of the state agency determination above) in the course of developing the claimant's case for review at the administrative hearing level, and evidence in the form of credible testimony at the claimant's hearing, consistent with medical evidence in the record, justifies a

10

> conclusion that the claimant's impairments are more limiting than was concluded by the state examiners. (Social Security Ruling 96-6p)
>
> The claimant has a migratory muscle and joint aches related to the residuals of Lyme disease and fibromyalgia. She has been on various treatments, and long-term antibiotics for several years. Since at least early 2008 Bicillin has reportedly provided significant improvement in her condition. She has routinely reported decreased pain levels, although she does experience short term flares of significant symptoms. She has retained normal motor strength and good range of motion. She moves about well at examinations. Although she is diagnosed with fibromyalgia, findings on examination have suggested some exaggeration, with her reporting all trigger points, including the controls, in the upper and lower extremities as being positive. The undersigned does recognize the claimant's conditions can cause pain and fatigue. However, the total evidence in the record shows the claimant is capable of sustaining limited sedentary work-related activities as specified above.

(AR 23).

After reviewing the record as a whole, the court concludes that the ALJ has articulated good reasons for the weight given to Dr. Ledtke's opinion. Contrary to plaintiff's assertion that the ALJ "wandered through the medical evidence of record like an individual at a buffet line," the ALJ's decision traced plaintiff's medical treatment, in great detail, from October 2007 through June 2009 (AR 17-20). Furthermore, there is no requirement that the ALJ mention every piece of medical evidence in the record. *See Heston*, 245 F.3d at 534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Accordingly, plaintiff's claim of error will be denied.

### 2. Plaintiff's medication side effects and exaggeration of symptoms

Plaintiff also claims that the ALJ failed to address her medication side effects and that the ALJ's findings suggested that plaintiff exaggerated her symptoms. Plaintiff's Brief at p. 12. Plaintiff, however, has failed to provide any meaningful argument to support these conclusory claims. A court need not make the lawyer's case by scouring the party's various submissions to

11

piece together appropriate arguments. *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).

> **C. The ALJ failed to consider the opinion of a treating doctor submitted before the date of the hearing.**

Plaintiff contends that the ALJ did not consider a statement made by Patrick T. Casey, M.D., on April 19, 2010, which her counsel states was submitted prior to the administrative hearing. Plaintiff's Brief at pp. 5, 13. The record reflects that plaintiff filed a pre-hearing brief on April 20, 2010, which did not mention Dr. Casey's statement (AR 33-34). The Appeals Council notice of January 27, 2012, indicates that plaintiff submitted additional evidence, which was included as Exhibits 9E, 10E, 20F and 21F (AR 4-5). However, Dr. Casey's April 19, 2010 statement is not among those exhibits (AR 4-5). In plaintiff's initial brief, she attempts to explain why Dr. Casey's opinion was missing from the administrative record:

> At the start of the hearing, a brief discussion was held regarding new evidence that had been submitted. The ALJ requested the evidence be submitted electronically because he was traveling to the remote hearing site in Benton Harbor, Michigan from Shreveport, Louisiana. Counsel was not able to confirm what evidence had been received and exhibited because the compact disc containing the exhibits had been produced days before the hearing date. The most likely reason the evidence did not reach the file is a glitch in the electronic filing system.

Plaintiff's Brief at p. 13.

Plaintiff's reply brief included a copy of Dr. Casey's April 19, 2010 statement, and documents indicating that the documents were faxed to the ODAR in Shreveport, Louisiana, where the documents were received on May 14, 2010 at 10:07:27 a.m. *See* docket no. 13 at pp. 3-8. Based on these documents, it appears that plaintiff's counsel successfully faxed these records to the ALJ

12

11 days after the May 3, 2010 hearing (AR 38). In her reply brief plaintiff requests a remand so that the Commissioner can review Dr. Casey's statement.

When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988). Under sentence-six, "[t]he court . . . may at any time order the additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." 42 U.S.C. § 405(g). In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

Upon reviewing the record, however, the court finds that Dr. Casey's statement is not material to plaintiff's claim. In order for a claimant to satisfy the burden of proof as to materiality, "he must demonstrate that there was a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The doctor's opinion is dated April 19, 2010, and based upon seeing plaintiff in 23 individual counseling sessions from June 18, 2008 through March 8, 2010. *See* docket no. 13 at p. 5. While the doctor states that plaintiff had psychological problems prior to 2003, he was not treating her at that time. *Id.* at p. 6. In addition, the report expresses opinions regarding plaintiff's

condition as of April 19, 2010, a date more than one year after her last insured date of March 31, 2009 (AR 15). "[I]nsured status is a requirement for an award of disability insurance benefits." *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984). Since plaintiff's insured status for purposes of receiving DIB expired on March 31, 2009, she cannot be found disabled unless she can establish that a disability existed on or before that date. *Id.* "Evidence relating to a later time period is only minimally probative." *Jones v. Commissioner of Social Security*, No. 96–2173, 1997 WL 413641 at *1 (6th Cir. July 17, 1997), citing *Siterlet v. Secretary of Health & Human Services*, 823 F.2d 918, 920 (6th Cir. 1987) (where doctor examined the claimant approximately eight months after the claimant's insured status expired, the doctor's report was only "minimally probative" of the claimant's condition for purposes of a DIB claim). Evidence of a claimant's medical condition after the last insured date is only considered to the extent it illuminates that condition before the expiration of the claimant's insured status. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988). *See, generally, Mingus v. Commissioner*, No. 98-6270, 1999 WL 644341 at *5 (6th Cir. Aug. 19, 1999) (deterioration of plaintiff's eyesight in August 1996 is not relevant to plaintiff's condition as it existed on her last insured date of December 31, 1993); *VanVolkenburg v. Secretary of Health and Human Services*, No. 88-1228, 1988 WL 129913 at *3 (6th Cir. Dec. 7, 1988) (deterioration of plaintiff's condition in 1987 not material to her condition in 1985); *Oliver v. Secretary of Health and Human Services*, 804 F.2d 964, 966 (6th Cir. 1986) (new medical evidence compiled in March 1985 that may show a deterioration in the claimant's condition "does not reveal further information about the claimant's ability to perform light or sedentary work in December 1983"). For these reasons, the court finds this evidence is so minimally probative that it would not have resulted in a different

disposition of plaintiff's disability claim, and plaintiff's request for a sentence-six remand will be denied.

## IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: March 28, 2013                                /s/ Hugh W. Brenneman, Jr.
                                                     HUGH W. BRENNEMAN, JR.
                                                     United States Magistrate Judge